FILED
2013 Feb-05 PM 12:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BRUCE PETTWAY, on behalf of himself and all others similarly situated,** ) ) ) | |
| Plaintiffs, ) | Case No. |
| ) | |
| v. ) | |
| ) | |
| **INNOVATION VENTURES, LLC., d/b/a** ) **LIVING ESENTIALS, a Michigan** ) **Corporation,** ) | |
| ) | |
| Defendant. ) | |

## CLASS ACTION COMPLAINT

Comes now Plaintiff Bruce Pettway on his behalf and behalf of others similarly situated, by and through counsel, who alleges as follows:

## THE PARTIES

1. Plaintiff Bruce Pettway is resident of the State of Alabama who currently resides in Jefferson County.

2. Defendant Innovative Ventures, LLC., d/b/a Living Essentials (hereinafter "Innovation") is a Michigan corporation with its principal place of business located in Farmington Hills, Michigan.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, because the amount in controversy exceeds $5,000,000 and the Plaintiff is a citizen of a State different from Defendant Innovation. Venue is proper in this Court because Plaintiff resides in the District, purchased the product at issue in the District, and Defendant Innovation does business in the District on a continuous and ongoing basis. The Court has

personal jurisdiction over Defendant because (a) the business transactions and the wrongful conduct at issue occurred within the State of Alabama, (b) Defendant is and has at all pertinent times conducted continuous and systematic business within the State of Alabama, and (c) Defendant has purposefully and knowingly injected its product into the stream of commerce with the intent that it be bought and sold within the State of Alabama. Accordingly, the Court may assert personal jurisdiction over Defendant Innovation without offending traditional notions of fair play and justice.

## FACTUAL ALLEGATIONS

4.     Defendant markets its 5-Hour ENERGY® Drink (the "Product") as a healthy vitamin-filled energy drink.  In reality, the Product is nothing more than a shot of caffeine.  The Product is sold in a two-ounce bottle at a retail price of $2.99.  Annual sales exceed one billion dollars.

5.     The following depicts an image that is substantially similar to the packaging and labeling of the Product purchased by Plaintiff:



6.  The following depicts an image that is substantially similar to a display of the Product:



7. As depicted above, the labeling on the Product says in bright yellow writing "Hours of energy now – No crash later" and "Sugar free." The display makes the same "no crash" claim.

8. The representation on the bottle label and the display of "no crash" sends a clear message to purchasers and consumers - - namely, that just two ounces of the Product will provide five hours of sustained energy within minutes without experiencing any negative "crash" side effects later. Defendant's marketing strategy drives home that point with numerous television commercials and advertisements which emphasize the "no crash" superiority of the Product.

9. Defendant's claim of "no crash later" is false, as admitted on the Defendant's website and hidden in microscopic language on the back of the bottle which reads: "No crash means no sugar crash."

10. Defendant, of course, states the obvious. There is no sugar crash because the Product is sugar free. Defendant fails, however, to disclose to consumers that the Product causes a caffeine crash.

10. The Product's label and displays are not only deceptive and untrue, but Plaintiff alleges that Defendant has had knowledge of studies since 2007 that show that over 25 percent of users of the Product suffer a caffeine crash.

11. Any attempt by Defendant to disclaim the representation made in its advertising does not shield Defendant from its untruthful and deceptive claims. Reasonable consumers should not be expected to look beyond deceptive representation made on the display and label to discover the truth about a product set out in virtually unreadable print on the back of the bottle,

or on Defendant's website.  This is particularly so given Defendant's misleading marketing campaign which touts the "no crash" claim with no qualification.

12. As a result of Defendant's uniform and consistent misrepresentation of "no crash," Defendant has been able to charge a price premium for the Product over other similar energy drinks.

13. Plaintiff purchased the Product in reliance of Defendant's material, deceptive labeling set forth above.  Plaintiff purchased the Product instead of cheaper energy drink products which make no claim of "no crash" in reliance on Defendant's deceptive representations.  He reasonably relied on those representations because Defendant has marketed itself as a reputable company that sells its Product through reputable retailers.  Plaintiff would not have purchased the Product if he had known that the Product causes a caffeine crash.

14. To be sure, Defendant's marketing practice seeks to differentiate the Product from other energy products by affirmatively claiming that the Product wears off gradually without a crash.

15. For example, the below is an excerpt of advertising found on Defendant's website:

**THE 5-HOUR ENERGY® DIFFERENCE**

Take 5-hour ENERGY®

Until afternoon naps become an accepted part of the work day you may need a little help staying sharp and alert.  **Coffee and soda help a little, but how long do they last before you're back for more?  But with a 5-hour ENERGY® shot you can leave grogginess behind and sail through your day.**

Take it in seconds

When you need an extra boost you don't want to wait.  You want to feel more energetic now.  A 5-hour ENERGY® shot takes just seconds to take, so it gets in your system fast.

Feel it in minutes

**In minutes you can feel a 5-hour ENERGY® shot working, helping you recapture the bright, alert feeling you need to power through your day\*.**

Lasts for hours

A 5-hour ENERGY® shot can **help you feel awake and alert for hours\*. It wears off gradually. That's because 5-hour ENERGY® is sugar free.**

16. As a direct and proximate result of the Defendant's deceptive representation and failure to disclose, Plaintiff has suffered economic damages as a result of purchasing the Product, in that he spent money on an energy drink that did cause a crash – and which therefore lacked the value he had been led to believe the Product had – and for which he paid a premium in the purchase price of the Product. Plaintiff purchased the Product at its retail price of $2.99.

17. A reasonable consumer would expect the Product to perform as advertised. The Product's label and packaging convey an express claim of "no crash" and fails to disclose that the Product causes a caffeine crash, information Defendant knows is material to the reasonable consumer. Defendant's inadequate labeling is an unfair deception because Defendant knows the Product causes the same or similar "crash" effects associated with other highly caffeinated no sugar energy drinks, thus rendering the Product unfit for its intended use.

## CLASS ALLEGATIONS

18. Plaintiff brings this class action pursuant *to Fed. R. Civ. P.* 23 on behalf of himself individually and the following class of persons: All individuals or entities who reside in the State of Alabama who purchased the Product during the relevant time frame. Excluded from the Class is the Defendant Innovation, any person, firm, trust, corporation or other entity affiliated with Defendant Innovation, and members of the federal judiciary.

19. Pursuant to *Fed. R. Civ. P.* 23(a)(1), the members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. On information and belief, plaintiff alleges that there are tens of thousands of Class members throughout the State of Alabama.

20. Pursuant to *Fed. R. Civ. P.* 23(a)(2), common questions of law and fact exist as to all members of the Class. These common questions include, but are not limited to, whether:

(a) Whether Defendant engaged in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its labeling and advertising of the Product, in violation of the Alabama Deceptive Trade Practices Act;

(b) Whether Defendant breached its express warranty that the Product causes no crash;

(c) Whether Defendant breached its implied warranty that the Product causes no crash;

(b) Whether Defendant materially misrepresented that the Product works as advertised - - namely, that there is no crash;

(c) Whether Defendant knew that the Product does not perform as advertised;

(d) Whether Plaintiff and members of the Class are entitled to injunctive relief enjoining Defendant from continuing to label the Product as advertised and/or from failing to disclose that the Product does not perform as advertised and that it does cause a caffeine crash after consumption;

(e) Whether Defendant should be made to engage in a corrective advertising campaign advising consumers that the Product's advertising is untrue; and

(f) Whether Plaintiff and members of the Class have been harmed and the proper measure of relief.

21. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, and fairness and equity than other available methods for the fair and efficient adjudication of this controversy.

22. Plaintiff's claim is typical of the claims of absent members of the Class and any applicable Subclasses.

23. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests that are antagonistic to the absent Class members. Plaintiff is represented by capable counsel that has experience regarding consumer fraud class actions.

24. Without the Class representation provided by Plaintiff, virtually no Class members will receive legal representation or redress for their injuries. Plaintiff and counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and Class counsel are aware of their fiduciary responsibilities to the Class members and are determined diligently to discharge those duties by vigorously seeking the maximum possible recovery for the Class.

25. Class certification is appropriate under *Fed. R. Civ. P.* 23(b)(2) with respect to Plaintiff's demands for injunctive and declaratory relief against Defendant because Defendant has acted on grounds generally applicable to the Class as a whole. Therefore, the final injunctive and declaratory relief sought in this case is appropriate with respect to the Class and any applicable Subclasses as a whole.

26. Class certification is also appropriate under *Fed. R. Civ. P.* 23(b)(3) with respect to Plaintiff's demand for damages because common questions of fact or law will predominate in determining the outcome of this litigation and because maintenance of the action as a class action is a superior manner in which to coordinate the litigation.

## COUNT ONE

## Violations of Alabama Deceptive Trade Practices Act

27. Plaintiff and members of the Class re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 26.

28. Plaintiff brings this claim individually and on behalf of the members of the Class.

29. The Alabama Deceptive Trade Practices Act, Alabama Code Section 8-19-5, prohibits a corporation from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have." The Act also prohibits a company from "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

30. At all relevant times, Defendant, in connection with its advertisements, offers for sale, sales and distribution of the Product, knowingly and purposefully misrepresented, concealed, omitted, and/or suppressed the material fact that a crash would occur with the Product. Defendant intended that Plaintiff and the members of the Class would rely upon its misrepresentations, concealments, omissions and/or suppressions so that Plaintiff and the members of the Class would purchase the Product. Defendant's packaging of the Product makes false or misleading representations that the Product does not have a crash effect which tended to

deceive, or deceived or misled, the consumers. In truth, a crash does occur with use of the Product.

31. The material misrepresentations and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public, particularly working adults, into believing that the Product would provide five hours of energy within minutes with no negative crash effects when in fact it does cause a crash as Defendant well knew.

32. Had Plaintiff and Class members known the Product did not perform as advertised, in that it does not provide five hours of energy within minutes with no crash, they would not have purchased the Product.

33. As a result of Defendant's deceptive and unfair acts, Plaintiff and Class members have been damaged in the amount of the difference between the premium price paid for the Product and the price they would have paid had they known that the Product was not fit when consumed in that it had such effects.

34. Plaintiff and Class members are entitled to damages in an amount to be proven at trial, but not less than the difference between the premium price paid for the Product and the price they would have paid had they known that the Product does not provide five hours of energy without a crash.

35. Defendant should also be ordered to cease its deceptive advertising, and should be made to engage in a corrective advertising campaign, to inform consumers that consumption of the Product does result in caffeine crashes.

36. In light of the recent United State Supreme Court decision in *Shady Grove Orthopedic Assoc., v. Allstate Ins. Co.*, 130 S.Ct. 1431 (2010), the Alabama Deceptive Trade

Practices Act's prohibition against class actions does not preclude plaintiff from maintaining a class action in federal court under *Fed. R. Civ. P.* 23.

## COUNT TWO

### Breach of Express Warranty

37. Plaintiff and members of the Class re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 36.

38. Defendant expressly warranted in its labeling, marketing, advertising and promotion of the Product that there would be no crash.

39. Plaintiff and members of the Class purchased the Product based upon the said express warranty.

40. Defendant breached its express warranty by selling a product that does cause caffeine crashes.

41. As a direct and proximate result of Defendant's breach of its express warranty, Plaintiff and members of the Class have been damaged in that they did not receive the product as specifically warranted and/or paid a premium for the product based on Defendant's representations.

42. Plaintiff is not required to provide notice to Defendant before the filing of this complaint because Defendant already knew about the defect of the Product and because Plaintiff suffered a personal injury from the use of the Product.

## COUNT THREE

### Breach of Implied Warranty of Merchantability

43. Plaintiff and members of the Class re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 42.

44. Defendant impliedly warranted that use of the Product would not result in a crash and that the Product is fit for its intended purpose. Defendant did so with the intent of inducing Plaintiff and members of the Class to purchase the Product.

45. Defendant breached its implied warranty in that the Product does in fact cause a crash.

46. Had Plaintiff and members of the Class know the true facts, they either would not have purchased the Product or would not have been willing to pay the premium price Defendant charged for the Product.

## COUNT FOUR

### Unjust Enrichment

47. Plaintiff and members of the Class re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 46.

48. Defendant has been unjustly enriched by its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

49. As a result of consuming the Product, Plaintiff sustained negative "crash" after-effects

50. The Products labeling is insufficient, as it misleads the consumer in to believing that the statements are true, when in fact, they are not. Defendant encourages consumers to believe that the Product is superior to other energy drink product because its consumption does not result in a crash.

51. Plaintiff (alternatively) does not have an adequate remedy at law against Defendant.

52. Plaintiff and Class members are entitled to restitution of the excess amount paid for the Product, over and above what they would have paid had they known that the Product was not safe when consumed.

53. Defendant should be required to disgorge itself of its ill-gotten gains.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the members of the Class, prays for the following relief:

A. An order that this action may be maintained as a class action under *Fed. R. Civ. P.* 23(b)(1)(A) or 23(b)(2) and/or 23(b)(3);

B. An order requiring Defendant to pay damages to Plaintiff and members of the Class damages under the Alabama Deceptive Trade Practices Act with any such amount to include interest;

C. An order requiring Defendant to pay damages to Plaintiff and members of the Class for breach of its express warranty with such amount to include interest;

D. An order requiring Defendant to pay damages to Plaintiff and members of the Class for breach of its implied warranty with such amount to include interest;

E. An order requiring Defendant to pay damages to Plaintiff and members of the Class for unjust enrichment;

F. An order enjoining Defendant from making any further false or misleading statements to Plaintiff and members of the Class;

G. An award of attorneys' fees and expenses; and

H. Any other further or different relief to which the Plaintiff may be entitled.

**JURY DEMAND**

Plaintiff respectfully demands a trial by jury.

DATED: February 5, 2013     WARD & WILSON, L.L.C.
　　　　　　　　　　　　　　　　PATRICK C. COOPER (ASB-4959-O77P)
　　　　　　　　　　　　　　　　JAMES S. WARD (ASB-7285-R64J)

　　　　　　　　　　　　　　　　/s James S. Ward
　　　　　　　　　　　　　　　　JAMES S. WARD

　　　　　　　　　　　　　　　　/s Patrick C. Cooper
　　　　　　　　　　　　　　　　PATRICK C. COOPER

　　　　　　　　　　　　　　　　2100 Southbridge Parkway
　　　　　　　　　　　　　　　　Suite 580
　　　　　　　　　　　　　　　　Birmingham, Alabama 35209
　　　　　　　　　　　　　　　　Telephone: 205-871-5404
　　　　　　　　　　　　　　　　Facsimile: 205-871-5758